UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:25-CR-350-PGB-RMN |
| | ) | |
| MARK LOFTIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT MARK LOFTIS'S MOTION
FOR A NEW TRIAL PURSUANT TO
<u>RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE</u>**

The Defendant, Mark Loftis, by and through his undersigned counsel, hereby moves this Honorable Court for a new trial in the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure. As set forth below, Dr. Loftis asserts that he was deprived of his right to a fair trial, under the Sixth Amendment to the U.S. Constitution. In support thereof, Dr. Loftis states as follows:

**<u>STATEMENT OF FACTS</u>**

*<u>The Allegations</u>*

On December 17, 2025, a federal grand jury returned the operative indictment charging Dr. Loftis with (1) conspiracy to commit health care fraud and

1

wire fraud, (2) conspiracy to defraud the United States and to violate the Anti-Kickback Statute, (3) two counts of theft of government property.  Doc. 1.

### *Pretrial Motions*

On March 6, 2026, Dr. Loftis filed a motion to dismiss Counts One and Two of the indictment because they charged multiple conspiracies in single conspiracies.  Doc. 27.  On May 4, 2026, the Court denied Dr. Loftis's motion.  Doc. 52.

On March 5, 2026, Dr. Loftis also filed a motion to dismiss Counts Three and Four based on improper venue.  Doc. 28.  On May 5, 2026, the Court denied Dr. Loftis's motion.  Doc. 53.

On March 13, 2026, Dr. Loftis filed a motion in limine to preclude expert testimony about topics including the Anti-Kickback Statute and Medicare regulations.  Doc. 31.  On May 5, 2026, the Court denied Dr. Loftis's motion.  Doc. 54.

On March 16, 2026, Dr. Loftis filed a motion in limine regarding lay witnesses' opinions and testimony regarding knowledge.  Doc. 34.  On May 5, 2026, the Court denied this motion, while acknowledging that others' knowledge "has little relevance in providing the defendant's knowledge" but may be "relevant if supplemented by evidence that the defendant has been exposed to the

2

same sources from which the others derived their knowledge."  Doc. 55 at 3 (quotations and citations omitted).

On March 16, 2026, the government filed a motion in limine regarding Dr. Loftis's consultations with attorneys and "self-serving hearsay." Doc. 33.  On May 5, 2026, the Court granted the motion in part and denied it in part.  Doc. 56.

On April 10, 2026, Dr. Loftis filed a motion in limine regarding the Anti-Kickback Statute.  Doc. 48.  On May 6, 2026, the Court denied Dr. Loftis's motion. Doc. 57.

On June 15, 2026, the government filed a supplemental motion in limine regarding Dr. Loftis's communications with people who are not attorneys and other topics.  Doc. 63.  On June 30, 2026, the Court granted the motion in part and deferred the motion in part.  Doc. 70.  Dr. Loftis filed a motion for clarification of the Court's order regarding the advice-of-counsel defense, which the Court orally granted on July 6, 2026.  Docs. 77, 91.

On July 2, 2026, the government moved to dismiss Counts 2, 3, and 4, and the Court granted the motion that same day.  Doc. 80, 82.

On July 3, 2026, Dr. Loftis filed a motion to preclude references to the Anti-Kickback Statute given the dismissal of Count Two.  Doc. 84.  Dr. Loftis also filed a motion for disclosure of grand jury transcripts and to dismiss Count One based

on the dismissal of Counts Two through Four.  Doc. 85.  The Court orally denied the motions on July 6, 2026.   Docs. 92 and 93.

### *Trial[1]*

Dr. Loftis's trial began on July 6 and lasted through July 20.  Dr. Loftis refers to his separate Rule 29 motion for descriptions of the government's case and his defense case.  See Doc. 138 at 2-7.

### *Jury Instructions*

On June 30, 2026, prior to trial and the dismissal of Counts Two through Four, the parties submitted a joint set of jury instructions.  Doc. 71.  The government and Dr. Loftis jointly proposed an instruction regarding the statute of limitations for Count One that would have instructed the jury that the government had to prove beyond a reasonable doubt that the conspiracy alleged in Count One continued after November 11, 2019.  Doc. 71 at 60.  Both the government and Dr. Loftis proposed instructions on venue *(id.* at 24-25 and 61-62 regarding Count One).  Dr. Loftis also proposed an instruction on multiple conspiracies that the government opposed.  *Id.* at 59.

On July 15, 2026, during trial, the parties submitted an amended joint set of

---

[1] The undersigned does not have the benefit of all the transcripts from the trial. Thus, the factual representations in this motion are based on the undersigned's recollection of the trial testimony and evidence.

jury instructions. Doc. 113. As before, the government and Dr. Loftis jointly proposed an instruction regarding the statute of limitations for Count One that would have instructed the jury that the government had to prove beyond a reasonable doubt that the conspiracy alleged in Count One continued after November 11, 2019. Doc. 113 at 68. Both the government and Dr. Loftis proposed instructions on venue (*id*. at 23-25). Dr. Loftis also proposed an instruction on multiple conspiracies that the government opposed. *Id*. at 60.

On July 17, 2026, the Court denied Dr. Loftis's request for an instruction on multiple conspiracies. The Court also denied the parties' request for instructions on statute of limitations and venue. Dr. Loftis objected to the denial of these requested instructions.

### *Closing Arguments*

On July 20, 2026, the parties made their closing arguments to the jury. Via counsel, Dr. Loftis argued that the government failed to prove beyond a reasonable doubt that he acted willfully or that he had an intent to defraud and thus was not guilty of conspiracy to commit health care fraud or wire fraud.

### *Jury Verdict*

On July 21, 2026, the jury found Dr. Loftis guilty of conspiring to commit health care fraud and wire fraud. Doc. 131. The Court has scheduled Dr. Loftis's

sentencing for October 7, 2026 at 10:00 a.m.  Doc. 135.

## MEMORANDUM OF LAW AND ARGUMENT

### *Legal Standards*

Federal Rule of Criminal Procedure 33 provides, in relevant part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The power of a district court to grant a defendant's motion for a new trial is much broader than the power to grant a motion for acquittal under Rule 29.  *See United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001) (citation omitted).  In evaluating a motion for a new trial, a district court "may weigh the evidence and consider the credibility of the witnesses," and it can set aside the verdict if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand."  *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004), quoting and citing *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985).

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless error) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018) (quotation omitted).  Courts should "address claims of cumulative error by first

6

considering the validity of each claim individually, and then examining any errors that [the court finds] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Id.* (quotation omitted).

### *Grounds For Relief Sought*

Dr. Loftis asserts that cumulative errors combined to deprive him of a fair trial and thus warrant the granting of a new trial pursuant to Rule 33.

First, Dr. Loftis was denied a fair trial on Count One given the government's extensive use of alleged violations of the Anti-Kickback Statute as a basis for conviction. Once the government dismissed Count Two before trial, all references to violations of the Anti-Kickback Statute should have been barred, as per Dr. Loftis's motion (Doc. 84). Count One refers only to "kickbacks" and "bribes," which have terms of legal meaning apart from the Anti-Kickback Statute and do not encompass all payments that might violate the Anti-Kickback Statute. By allowing the government to present significant amounts of evidence and argument about the Anti-Kickback Statute, the jury was invited to convict Dr. Loftis of health care fraud and wire fraud based on payments that are not "kickbacks" or "bribes" as defined by the Eleventh Circuit and thus to be convicted on a basis not set forth in the indictment. Dr. Loftis also was subject to prejudicial

7

evidence, such as testimony by government witnesses about how they "sold" doctor's orders and acted in the "wrong way."  This testimony may have been correct in terms of the Anti-Kickback Statute but was not correct in terms of "kickbacks" and "bribes" as alleged in the indictment.

Second, Dr. Loftis was denied a fair trial due to the Court's ruling rejecting his proposed instructions on multiple conspiracies.  The evidence showed that Dr. Loftis was an unwitting participant in Mr. Simms's "telemedicine project" in September 2017, that Dr. Loftis became more involved over the course of 2018 and early 2019, that Dr. Loftis made agreements with Summit and Medtech and others after stopping work with Mr. Simms in the spring of 2019.  The jury should have been instructed that it should have found Dr. Loftis not guilty if it found that there were multiple conspiracies (such as an initial one where Mr. Simms was the "key man" and a later one where Dr. Loftis was the "key man"), rather than the single conspiracy alleged in the indictment.

Third, Dr. Loftis was denied a fair trial due to the Court's ruling rejecting the parties' proposed instruction on the statute of limitations.  The parties agreed that the operative date for the statute of limitations was November 11, 2019, five years before the parties executed the first of multiple tolling agreements.  *See* Doc. 71 at 81 n. 58.  By November 11, 2019, Dr. Loftis had stopped working with Mr.

8

Simms, True Alliance, and others who had been involved beforehand, and he had stopped billing for L0650 back braces that were ordered by telemedicine doctors. Given these changes, the jury should have been instructed that it should have found Dr. Loftis not guilty if it found Dr. Loftis was not part of a conspiracy as of November 11, 2019 or afterwards. *See United States v. Edwards*, 968 F.2d 1148, 1153 (11th Cir. 1992) (reversing a conviction because no instruction was given regarding the statute of limitations and given the presentation of evidence that made the question of whether the government instituted the prosecution "in a timely manner" "an issue for the jury to determine").

Fourth, Dr. Loftis was denied a fair trial due to the Court's ruling rejecting his proposed instruction on venue. As noted in his Rule 29 motion, there was no evidence that Dr. Loftis made any agreements or performed any overt acts in the Middle District of Florida, and there was no evidence that any member of the alleged conspiracy as of November 11, 2019 made any agreements or performed any overt acts in the Middle District of Florida. The jury should have been instructed that it should have found Dr. Loftis not guilty if it found that venue had not been established in the Middle District of Florida. *See United States v. Dileo*, 625 Fed. Appx. 464, 469-70 (11th Cir. 2015) ("Our precedent states that it is reversible error to fail to instruct [on venue] when the defendant requests it and

9

the testimony puts venue at issue"), citing *United States v. Green*, 309 F.2d 852, 856-57 (5th Cir. 1962) (reversing conviction for failure to submit the question of venue to the jury and noting the "grave danger of injustice" if a defendant was "not even alleged to have participated in the act which occurred in the district where the indictment against him and nine others was returned").

Fifth, Dr. Loftis should be granted a new trial because this is the "rare" case in which evidence of guilt, even if "legally sufficient" for purposes of Rule 29, "is thin and marked by uncertainties and discrepancies." *Butcher v. United States*, 368 F.3d 1290, 1297 n. 4 (11th Cir. 2004). In terms of willfulness, the government's argument largely rested on the fact that multiple government witnesses testified in 2026 that they believed that they were doing things "the wrong way" or improperly in their dealings with Dr. Loftis. This testimony has little relevance and should not be considered.

Moreover, several key pieces of evidence were not corroborated in any meaningful way. Charles Schwartz testified that Dr. Loftis trained him and Peter Roussinicolos on how to commit health care fraud, but his own testimony showed that he and Mr. Roussinicolos were engaged in fraud before meeting Dr. Loftis, and the evidence showed that Dr. Loftis met Mr. Roussinicolos months after Mr. Schwartz claimed to have met him. The government argued in rebuttal that Dr.

10

Loftis did sell brace orders to Mr. Roussinicolos in August 2019, but there was no evidence to support that the transaction actually took place – there was no record of specific orders going from Back Pain Home Supplies to Mr. Roussinicolos's company, and there was no record of payment being made directly or indirectly in the amounts contemplated in August 2019.

The evidence of violations of the Anti-Kickback Statute was also marked by uncertainties and discrepancies.  As the government itself acknowledged in a pre-trial filing, "compensation structures based on the value of each referral, without 'something more,' cannot show intent to improperly influence a referral or order." Doc. 50 at 3-4.  Even if payments were made on a per-lead basis to Prizm, True Alliance, and Elite, the evidence is unclear that such payments improperly influenced referrals or orders when there was no evidence showing that those companies improperly influenced any decisions by patients or doctors and no evidence showing that Dr. Loftis was aware that those companies made decisions on behalf of patients or doctors.

So too with Summit, Hank Bloom, and Medtech.  Regarding Summit and Hank Bloom, the evidence showed that Dr. Loftis was paying call centers to make calls to people whom he believed had responded to advertising and who were interested in braces and/or continuous glucose monitors.  The people making such

11

calls did not make decisions on behalf of the patients or the doctors, and thus payments to those people did not implicate the Anti-Kickback Statute. Even if the payments were covered by the Anti-Kickback Statute, the evidence showed that Dr. Loftis believed that the payments were covered by a safe-harbor to the Anti-Kickback Statute.

Regarding Medtech, the evidence showed that Dr. Loftis was paying Medtech for every assessment that he believed was done by a doctor using Medtech's software. While Dr. Loftis agrees that it would violate the Anti-Kickback Statute if his company made payments indirectly to a doctor in order to influence the doctor's medical decision-making, there was no evidence that Medtech actually transferred any money to any doctor, and there was no testimony from any doctors or any other evidence indicating that such payments or transfers that may have occurred actually improperly influenced doctors' medical decisions. Accordingly, there was insufficient evidence for the jury to conclude that payments to Medtech violated the Anti-Kickback Statute. And even if the payments to Medtech did violate the Anti-Kickback Statute, the evidence was insufficient to show that Dr. Loftis knew that such payments were illegal.

Ultimately, the evidence showed that Dr. Loftis engaged in conduct that showed good faith and an intent to comply with the law as he learned more about

12

the law.  The evidence also showed that Dr. Loftis made a relatively small amount of money from the massive conspiracy that he was charged with and convicted of, a factor that is inconsistent with the government's position and the jury's verdict. Even if the evidence was legally sufficient to support the conviction under Rule 29, this is the rare case where a new trial is warranted.

Sixth, the combined effect of the errors warrants the granting of a new trial under the cumulative error doctrine.  An appellate court "must review the prejudicial effect of all evidentiary errors, evaluated under both preserved and plain error standards, in the aggregate [and should] reverse if the cumulative effect of the errors is prejudicial, even if the prejudice caused by each individual error was harmless."  *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005) (emphasis in original) (footnote omitted) (citation omitted), abrogated on other grounds by *Davis v. Washington*, 547 U.S. 813, 821 (2006).  Under the cumulative-error doctrine, the Court "will reverse a conviction where an aggregation of non-reversible errors yields a denial of the constitutional right to a fair trial."  *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014).  The Court should assess cumulative-error claims by "first considering the validity of each claim individually, and then examining any errors . . . in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a

13

fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012); *see also United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983) ("A piecemeal review of each incident does not end our inquiry. We must consider the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under our Constitution."). Here, the aggregate impact of the prejudice resulting from the government's heavy reliance on evidence and arguments about the Anti-Kickback Statute and the denied jury instructions combined to deprive Dr. Loftis of a fair trial. As a result, the interests of justice call for the granting of a new trial under Rule 33.

## CERTIFICATION OF CONFERRING WITH OPPOSING COUNSEL

The undersigned has conferred with the government which opposes this motion.

## CONCLUSION

WHEREFORE, the Defendant, Mark Loftis, respectfully requests that this Court grant the instant motion and order a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Respectfully submitted this August 4th, 2026

/s/ Stephen Chahn Lee
Stephen Chahn Lee
Admitted *pro hac vice*
Law Office of Stephen Chahn Lee, LLC

14

33 N. Dearborn Street, Suite 1800
Chicago, IL 60602
312-436-1790
Email:  slee@stephenleelaw.com

**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com

*Attorneys for Mark Loftis*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will send a notice of electronic filing

to all counsel in this case on August 4, 2026.

/s/ Stephen Chahn Lee

15